UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TAIWAN ALLEN,<br><br>               Plaintiff,<br><br>v.<br><br>CHARLES DANIELS, *et al.*,<br><br>               Defendants. | Case No. 3:21-CV-00524-CLB[1]<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS MOTIONS FOR DISCOVERY SANCTIONS AND JURY TRIAL**<br><br>[ECF Nos. 41, 47, 48] |

This case involves a civil rights action filed by Plaintiff Taiwan Allen ("Allen") against Defendants Charles Daniels, Isidris Baca, and Michael Minev (collectively referred to as "Defendants"). Currently pending before the Court are three motions. First is Defendants' motion for summary judgment. (ECF No. 41.) Allen responded, (ECF No. 53), and Defendants replied. (ECF No. 54.) The second and third motions are Allen's identical motions requesting discovery sanctions and a jury trial. (ECF Nos. 47, 48.) For the reasons stated below, Defendants' motion for summary judgment, (ECF No. 41) is granted, and Allen's motions for discovery sanctions and a jury trial, (ECF Nos. 47, 48), are denied.

**I.    BACKGROUND**

    **A.    Procedural History**

Allen is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), who is currently incarcerated at Ely State Prison ("ESP"). On December 30, 2021, Allen filed a civil rights complaint under 42 U.S.C. § 1983 for events that occurred while he was incarcerated at Warm Springs Correctional Center ("WSCC"). (ECF No. 1-1.) On May 20, 2021, the Court screened Allen's complaint pursuant to 28 U.S.C. §

---

[1] The parties consented to the undersigned's jurisdiction to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C.§ 636(c) and Federal Rule of Civil Procedure 73. (*See* ECF No. 25.)

1915A(a). (ECF No. 6.) Allen alleged that Daniels, Bacca, and Minev implemented policies that allowed inmates who tested negative for Covid-19 to be housed together with inmates who tested positive for Covid-19. As a result of the Defendants' actions, Allen alleged he remained housed with an inmate who had tested positive for Covid-19 while Allen simultaneously tested negative, and therefore ultimately contracted Covid-19 himself. (*Id.*) Based on these allegations, the Court allowed Allen to proceed on a single claim: Eighth Amendment deliberate indifference to unsafe prison conditions against Daniels, Baca, and Minev.[2] (*Id.* at 7, 9.)

### B. Motion for Summary Judgment

On September 20, 2023, Defendants filed the instant motion arguing summary judgment should be granted because Defendants are entitled to qualified immunity as: (1) no constitutional violation occurred; and (2) even if a constitutional violation occurred, no clearly established right existed at the time of the alleged violations. (ECF No. 41.)

On August 15, 2023, Allen responded. (ECF No. 73.) Allen argues that because he was given results of a negative Covid-19 test at the same time as his cellmate received a positive test, Defendants were deliberately indifferent when they failed to move Allen out of the cell. (*Id.*) Allen's argument centers on the knowledge of Patricia Smith, who is not a party to the instant suit. (*Id.*) Allen also includes arguments relating to facts which were not alleged in his complaint, and therefore may not be considered. (*Id.*)

Defendants replied on August 29, 2023. (ECF No. 74.) Defendants argue Allen failed to show any facts which indicate Defendants and the NDOC disregarded the risks posed by the Covid-19 pandemic. (*Id.*) Defendants also note that most of Allen's response centers on the actions of Patricia Smith, who is not a party to the instant lawsuit. (*Id.*)

---

[2] The Court's screening order allowed Allen to proceed against Daniels, Baca, and Minev, "as well as Jane Does 1-3, when Plaintiff learns their identities." (ECF No. 6 at 7.) This means the case would proceed against the Jane Does when – and only when – Allen substituted their names or moved to amend his complaint to assert claims against each Jane Doe. However, the docket reflects Allen has not identified the remaining Jane Does nor has he effectuated service upon them. The deadline to move to amend the pleadings passed on February 6, 2023. (ECF No. 23 at 6.) Therefore, any argument as to any Jane Doe may not be considered by the Court.

### C. Factual Summary[3]

In support of the motion for summary judgment, Defendants submitted evidence in the form of a declaration from WSCC Acting Associate Warden Nethanjah Breitenbach ("Breitenbach"). (ECF No. 41-3.) In this declaration, Breitenbach states that in November and December of 2020, WSCC was directed by their medical professionals to "quarantine in place" as to slow and/or stop the spread of Covid-19. (ECF No. 41-3 at 2-3.) Breitenbach also declared that, because the Center for Disease Control's ("CDC") guidance was that Covid-19 transmission could take up to 72 hours to come to fruition, WSCC was forced to stop all bed and institutional moves to prevent contaminating the facility. (*Id.* at 3.) Defendants also presented evidence in support of this motion that indicates Minev, as NDOC's Medical Director, implemented NDOC's Covid-19 response through June 12, 2020. (ECF No. 41-8.)

On November 6, 2020, Allen and his cellmate Lamont Howard were both tested for Covid-19. (ECF No. 53 at 1.) On November 12, 2020, medical staff informed Allen he had tested negative for Covid-19 and simultaneously informed Howard he had tested positive. (*Id.*) Allen subsequently contracted Covid-19 and tested positive on November 24, 2020. (*Id.*) Allen declares he "verbally expressed to nurse [he] need[ed] to be moved" from sharing a cell with Howard. (*Id.*)

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine"

---

[3] The facts stated in this section are undisputed unless otherwise noted herein.

3

only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its

burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a pro se litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

///
///

## III. DISCUSSION

### A. Lack of Authenticating Affidavits

Before turning to the merits of Defendants' motion for summary judgment, the Court must address deficiencies in the exhibits provided in support of the motion. Critically, Defendants support their motion with multiple exhibits that are not accompanied by the required authenticating affidavit. As stated above, documents submitted during summary judgment must be authenticated. *Las Vegas Sands, LLC*, 632 F.3d at 532-33. "[U]nauthenticated documents cannot be considered on a motion for summary judgment. To be considered by the court, documents must be authenticated by and attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) (citation and internal quotation marks omitted); *see also Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550–51 (9th Cir. 1990.) Therefore, the Court will only rely on exhibits which do not require an authenticating affidavit. Fed. R. Civ. P. 56 advisory committee's note (2010) ("28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit."). The Court cannot and will not consider the unauthenticated exhibits in ruling on the current motion.[4]

In addition to the unauthenticated exhibits, Defendants provided two sworn

---

[4] Defendants and their counsel from the Nevada Attorney General's Office are reminded of their obligation to provide authenticating affidavits when filing exhibits to a motion for summary judgment. Recently, the Court has received multiple motions for summary judgment in other prison civil rights cases filed by attorneys from the Nevada Attorney General's office that rely on unauthenticated exhibits. The Court has noticed a pattern of the Nevada Attorney General's office filing motions for summary judgment without authenticating affidavits, only to later file an errata with the missing affidavits – in some instances after the opposition to their motions are submitted. While there may be rare circumstances where an authenticating affidavit cannot be timely obtained, the repeated, and seemingly normalized, use of this method is unacceptable. The Nevada Attorney General's office is reminded that failure to provide authenticating affidavits *at the time of filing* may result in negative consequences for their client, including the denial of otherwise meritorious motions.

declarations. (ECF Nos. 41-3, 41-8.) Although the Court can accept these declarations as evidence, the Court must discuss multiple issues concerning the declaration of Minev. (ECF No. 41-8.) First, this declaration was created for an entirely separate case, *Gregory Kerkorian v. State of Nevada Dept. of Corr., et al.*, No. 2:20-cv-00950-RFB-BNW (D. Nev. filed May 27, 2020). (*Id.*) While the document is a sworn declaration and therefore is acceptable as evidence on a motion for summary judgment, because it was prepared for another suit, most of the lengthy document is irrelevant. The declaration addresses another plaintiff, claims, issues, and time frame, as well as another distinct case. (*Id.*)

Next, the declaration itself was signed on June 12, 2020, months before the claim in the instant lawsuit arose in November of 2020. (*Id.*) Although the Court can rely on Minev's declaration, there are key differences in NDOC policies from June to November, based on the issue in this case: whether inmates who tested positive were moved from their cells to quarantine. In Minev's declaration, he states that "[i]nmates who test positive are quarantined either in medical or in a quarantine/isolation unit as determined by medical staff." (*Id.* at 7.) By contrast, Breitenbach's declaration states that in November and December of 2020, WSCC was directed by their medical professionals to "quarantine in place" as to slow and/or stop the spread of Covid-19. (ECF No. 41-3 at 2-3.) Therefore, although the Court may rely on Minev's declaration as admissible evidence, the portions of his declaration which actually relate to the instant lawsuit are outdated and are therefore almost entirely irrelevant.

Finally, Defendants include "attachments" to the declaration itself. First, this violates the Local Rules, as *each* exhibit or attachment must be attached as a *separate* file. LR IC 2-2(3). Moreover, because the CM/ECF filing information that is automatically populated on every filing was not removed before re-filing the declaration in this case, it is virtually impossible for the Court to determine which page Defendants are citing to in their motion for summary judgment. (*Id.*) Although this was likely done because the declaration refers to the attachments by the ECF docket number for the case in which it was prepared, the Court cannot identify what is being referenced without closely reading

and examining all 103 pages of this exhibit.

Defendants are reminded that the Court is not a pig searching for truffles in the forest. *U–Haul Co. of Nevada, Inc. v. Gregory J. Kamer, Ltd.*, Case No. 2:12–CV–00231, 2013 WL 4505800, at *2 (D. Nev. Aug. 21, 2013) (internal citation omitted) ("[T]he Court reminds the parties that the burden of representation lies upon them, and not upon the Court. Whether it is the familiar 'pigs hunting for truffles' metaphor or the 'spaghetti approach,' the idea that the Court will not perform the work of representing the parties is clear."); *Agarwal v. Oregon Mut. Ins. Co.*, Case No. 2:11–cv–01384, at *3, 2013 WL 211093 (D. Nev. Jan. 18, 2013) (internal citation omitted) ("[I]t is not the responsibility of the judiciary to sift through scattered papers in order to manufacture arguments for the parties."). The Court will not parse through 103 pages to make Defendants' case for them, and Defendants and their counsel should be mindful of this in the future.

With this said, however, it appears Defendants have provided sufficient evidence in a form the Court can consider in ruling on this motion. Therefore, the Court will now turn to the merits of Allen's claim.

### B. Eighth Amendment Conditions of Confinement

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. MO Chapman*, 452 U.S. 337, 347 (1981). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

To establish a violation of these duties, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See id.* at 834.

"[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, Defendants argue that they were not deliberately indifferent because they did not "disregard" the risk of harm in this case – which is a necessary element that Allen must establish to survive summary judgment. (ECF No. 41 at 10.) Defendants argue that, even if precautionary measures failed to prevent Allen from being infected, there is no evidence that the precautionary measures established were unreasonable. (*Id.*) Defendants provide sworn testimony that, because the CDC's guidance was that Covid-19 transmission could take up to 72 hours to come to fruition, they halted all institutional and bed transfers to ensure they did not unsuspectedly spread Covid-19. (ECF No. 41-3 at 2-3.) As can be shown by the differences in Covid-19 policies from June to November of 2020 outlined above, Defendants were updating their policies to reflect new information about the novel disease. (*Compare* ECF No. 41-8, with ECF No. 41-3 (instituting a halt in institutional and bed transfers in response to new CDC guidance that a Covid-19 infection could take up to 72 hours to come to fruition).)

While Defendants may have been unsuccessful in their efforts to prevent Allen from contracting Covid-19, it cannot be said they disregarded the risk Covid-19 posed to *all* inmates. Defendants are responsible for the safety of all NDOC inmates, and making a choice that would prevent the most inmates from contracting the virus is a rational decision which does not demonstrate the disregard of risk to any individual inmate's safety. *Farmer*, 511 U.S. at 837. Therefore, Defendants have met their initial burden on summary judgment.

The burden now shifts to Allen to come forward with some evidence to create an issue of fact on this claim. However, Allen has not provided any facts to show that Daniels, Baca, and Minev knew of *and disregarded* the serious risk of Covid-19. As Defendants met their burden on summary judgment, and Allen has not established that a genuine issue of material fact actually exits, Defendants' motion for summary judgment is granted.[5] *Matsushita,* 475 U.S. at 586.

### C.     Miscellaneous Motions

In addition to Defendants' motion for summary judgment, two motions filed by Allen are pending before the Court. (ECF Nos. 47, 48.)[6] The motions are identical and were filed twice, with one being labeled as a motion for jury trial and the other as a motion for discovery sanctions. (*Id.*) As a threshold matter, Allen does not support his motions with a points and authorities, which alone is sufficient for denial. LR 7-2(d). However, this is not the only ground for denial.

As to Allen's request for discovery sanctions, the motions are denied as untimely. On July 6, 2023, the Court granted Defendants' motion for extension of time to complete discovery and file dispositive motions. (ECF No. 38.) That order set the discovery

---

[5] As the motion for summary judgment is granted on the merits, the Court need not consider arguments made regarding qualified immunity.

[6] Defendants responded to these motions. (ECF Nos. 50, 51, 52.) Specifically, Defendants filed an identical document in response to three filings made by Allen, (ECF Nos. 46, 47, 48). (ECF Nos. 50, 51, 52.) The first filing, (ECF No. 46), is a "Declaration of Facts," not a motion, and therefore the Court need not consider it as there is nothing for the Court to grant or deny.

deadline as August 21, 2023. (*Id.* at 3.) Pursuant to the Court's initial scheduling order, discovery motions must be filed and served no later than fifteen days after the close of discovery. (ECF No. 23 at 4.) Therefore, the deadline to file discovery motions was September 5, 2023. However, Allen filed the motions for discovery sanctions on September 26, 2023. (ECF Nos. 47, 48.) Thus, Allen's motions for discovery sanctions, are denied.

Next, Allen requests the "first available docket space for Jury trial on the merits." (*Id.*) However, as discussed above, the Court is granting the Defendants' motion for summary judgment. This means that judgment will be entered in favor of Defendants and the case will be closed. Therefore, this case will not proceed to a jury trial and thus this aspect of the motions are denied as moot.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment, (ECF No. 41), be **GRANTED**.

**IT IS FURTHER ORDERED** that Allen's motions for discovery sanctions and jury trial, (ECF Nos. 47, 48), be **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED**.

**DATED**: November 3, 2023.

**UNITED STATES MAGISTRATE JUDGE**